Citation Nr: 1126158 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 98-03 158A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to compensation under the provisions of 38 U.S.C.A. § 1151, for a spinal cord infarction.

2. Entitlement to service connection for diabetes.

3. Entitlement to service connection for cancer.

4. Entitlement to service connection for blindness, right eye.

5. Entitlement to service connection for glaucoma.


REPRESENTATION

Appellant represented by: Daniel G. Krasnegor, Attorney



ATTORNEY FOR THE BOARD

April Maddox, Counsel


INTRODUCTION

The Veteran had active service from December 1951 to May 1952.

This case comes before the Board of Veterans' Appeals (Board), on appeal from a December 1997 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

The Board notes that this matter has previously been before the Board and was adjudicated in decisions dated in August 2000, May 2002, September 2004 and, most recently, in a decision dated in November 2009. In that decision, the Board denied the claim. The Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (CAVC or Court). In December 2010, the Court granted a Joint Motion for Remand, vacating and remanding the claim to the Board. 

The Board notes that, by rating decision dated in December 2010 the RO found that the Veteran had failed to submit new and material evidence to reopen a previously denied claim of entitlement to service connection for a stroke (previously denied as a spinal cord infarction), and the Veteran submitted a notice of disagreement as to this decision. However, as above, in December 2010 the Court vacated the November 2009 denial for compensation under the provisions of 38 U.S.C.A. § 1151, for a spinal cord infarction. As such, the November 2009 decision is not final and the previously appealed issue regarding spinal cord infarction requiring new and material evidence is now moot. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the Department of Veterans Affairs Regional Office. VA will notify the appellant if further action is required.


REMAND

The Veteran contends that he sustained a spinal cord infarction as a result of VA's failure to timely refill prescribed medication, specifically aspirin. 

In the 1980's the Veteran was diagnosed with coronary artery disease (CAD), hypertension, obesity, and gout. As a result of treatment at a VA hospital, he received prescriptions for his conditions, which were filled by the VA Medical Center (VAMC). The Veteran was hospitalized at Holmes Regional Medical Center from January 7 to 16, 1997, with a diagnosis of spinal cord infarction. He was readmitted to the same hospital from January 17 to 24, 1997. His treating physician during both hospitalizations, Dr. R.M.V., noted on the discharge report, a diagnosis of spinal cord infarction, myelodysplastic syndrome with thrombocytosis, hypertension, and glaucoma.

In February 1997 the Veteran submitted a claim for entitlement to compensation under the provisions of 38 U.S.C.A. § 1151, in which he indicated that he was "recently hospitalized due to a stroke that occurred from [medical] supplies not shipped to [him] on time." In a statement sent to VA the following month, he stated that, as a result of not receiving his medications from the VAMC for three weeks, he had a stroke on January 6, 1997.

In a May 1997 letter, Dr. R.M.V. stated that "myeloproliferative disorder with thrombocytosis" was the immediate cause of the spinal cord infarction, as it resulted in hyper-coagulability and the subsequent thrombosis of the anterior spinal artery. In a March 1998 letter, Dr. R.M.V. stated that: (1) the Veteran had a history of sustained hypertension; (2) it is well known that hypertension could contribute to any type of cerebrovascular disease; and (3) it was at least "conceivable" that there was a relationship between discontinuation of the Veteran's blood pressure medicines and his spinal cord infarction. 

In a December 1998 statement, Dr. R.M.V. stated that the Veteran had a history of hypertension and was not on his medications when he was admitted in January 1997, and that he believed severe hypertension was a significant contributing cause to the spinal cord infarction. 

In September 1997, following a request for a medical opinion, a VA hematologist, Dr. N.F., noted that the Veteran had a diagnosis of hypertension, coronary heart disease, gout, and obesity. Dr. N.F. acknowledged the diagnosis of myeloproliferative syndrome by Dr. R.M.V., and opined that if the Veteran had a true myeloproliferative syndrome, aspirin may have been useful, but was not a guarantee, to decrease the risk of thrombosis. Dr. N.F. noted that the treatment of myeloproliferative syndromes with platelet lowering agents was controversial. He acknowledged that, if a patient has had a thrombotic event, then lowering the platelet count to less than 650,000 (approximately), decreases the risk of further events. Dr. N.F. then opined that if the Veteran's medications were sent to him as requested, he should not have been out of aspirin in December 1996. 

The RO initially denied the claim by rating decision dated in December 1997 and this issue was denied by the Board in August 2000. This denial was vacated by the Court and, after several remands, in November 2006 the Court determined that the Board's reliance on either of the opinions of Drs. R.M.V. or N.F. was erroneous. The Court also determined that: (1) neither Dr. R.M.V. nor Dr. N.F. appeared to have reviewed the Veteran's treatment records prior to providing their opinions; (2) neither opinion specifically acknowledges what medications the Veteran was taking to treat his hypertension; and (3) neither opinion provides any basis for concluding that he either was or was not continually taking the appropriate medication.

In August 2007 the Board instructed the RO to obtain a certification from the appropriate VA facility to establish when the Veteran's medications were mailed in the fall and early winter of 1996. The Board also instructed the RO to schedule the Veteran for a VA examination "to determine the nature and etiology of the spinal cord infarction." In response to the request for certification of when the Veteran's medications were mailed to him in the fall and early winter of 1996 the VAMC responded that the Veteran requested refills on all medications on November 13, 1996 but that all of the mail to the Veteran was delivered as non-certified, and, thus, there was no tracking of his mailed prescriptions. 

In December 2007 the Veteran was provided a VA examination by Dr. J.K.R. Dr. J.K.R. reviewed the claims file and obtained an oral history. Dr. J.K.R. noted that the medications the Veteran was taking prior to his stroke included Monopril, Norvasc, Allopurinol, and aspirin. Dr. J.K.R. noted the Veteran's report that prior to December 1, 1996, he was taking all of his medications on a regular basis. Dr. J.K.R. conducted a neurological examination and diagnosed spinal cord infarct. Dr. J.K.R. opined that the Veteran's spinal cord infarct is "like likely as not (less than 50/50 probability) due to training, hospital care, medical, or surgical treatment or an examination furnished by VA." Dr. J.K.R. explained: 

Although the [V]eteran had long standing hypertension and CAD; it is the hypercoagulable state that both Drs. [R.M.V.] and [N.F.] refer to as the proximate cause of the [V]eteran's infarction. It is less likely as not that the [V]eteran's spinal cord infarction is the result of training, hospital care, medical or surgical treatment or an examination furnished by the VA.

In a September 2007 statement from Dr. K.S.G., the Veteran's private physician, Dr. K.S.G. wrote that he had seen the Veteran intermittently since January 1997, when consultation with him was requested after the Veteran developed the acute onset of lower extremity paraparesis from a spinal cord infarct. Dr. K.S.G. noted that hematologic evaluation revealed a myeloproliferative disorder with thrombocytosis. Dr. K.S.G. also noted that "the combination of an elevated platelet count (thrombocytosis" and the qualitative plate abnormality that is often seen with this hematologic dyscrasia would predispose him to thromboembolic complications." Dr. K.S.G. further stated, "[d]aily aspirin use would diminish [the] propensity for blood clots." He opined, if aspirin was in fact supplied to [the Veteran] by [VA], and its refill was extended beyond 7 to 10 days, it is at least as likely as not that it was an exacerbating feature of the spinal cord infarct." 

In March 2008, the RO requested an addendum to the December 2007 VA examination report in light of Dr. K.S.G.'s letter. In March 2008, Dr. J.K.R. stated that:
 
The [V]eteran has a record in his cfile of being prescribed Aspirin 325 mg per day. This prescription dates back as far as 1991. While aspirin is one of the prophylactic treatments for myeloproliferative Disorders, [and] the [V]eteran had been on aspirin for at least 6 years at the time of his diagnosis[, a]spiring is readily available over the counter and the [V]eteran would have had no difficulty with supply if in fact he was in danger of running out of his pills. It is less likely as not that the [V]eteran's spinal cord infarction is the result of training, hospital care, medical, or surgical treatment or an examination furnished by the VA.

In August 2008 the Board remanded the claim for a clarification opinion. In doing so, the Board noted that Dr. J.K.R. discussed the availability of aspirin over the counter in his March 2008 opinion, but the availability of aspirin was not relevant in resolving the issue at hand. The Board found that it was "unclear from the opinion whether the examiner relied on the availability of aspirin over the counter in reaching his opinion." The Board instructed that Dr. J.K.R. "should not rely on the availability of any medication over the counter when rendering his opinion." 

In a December 2008 addendum, Dr. J.K.R. stated that:

Extensive review of the [V]eteran's cfile indicates that the probable cause of his spinal cord infarct is related to the hypercoagulable state caused by the myeloproliferative disorder. It is unrelated to any training, hospital care, medical or surgical treatment or an examination furnished by the VA. 

In April 2009, the Board again remanded the claim for a clarification opinion. The Board instructed that "the physician should address the Veteran's assertion that a failure to refill his prescribed medications resulted in the spinal cord infarct," the physician "should not rely on the availability of any particular medication over the counter when rendering his opinion" and the physician "should specifically address the September statement from Dr. K.S.G."

In a June 2009 addendum, Dr. J.K.R. again opined that the Veteran's spinal cord infarct is "less likely as not (less than 50/50 probability) due to training, hospital care, medical or surgical treatment or an examination furnished by VA. Dr. J.K.R. explained that:

The [V]eteran was diagnosed with Myeloproliferative Disease with thrombocytosis as the cause of his spinal cord infarct. This is stated by his admitting physician, Dr. R.M.V. and Dr. N.F. in Jan[uary] 1996. Although aspirin is used in the treatment of spinal cord infarctions, and as stated by Dr. K.S.G. in Sep[tember] 2007, does decrease the propensity of the blood to clot[,] there have been no medical/scientific studies to confirm that aspirin, or any other medication, would prevent the development of the hypercoagulable stated caused by the Myeloproliferative disorder. 

As directed by the December 2010 Joint Motion for Remand, the Board finds that a remand is necessary to provide the Veteran with a new VA examination. As above, in November 2006 the Court determined that the opinions of Drs. R.M.V. and N.F. were inadequate as neither physician had reviewed the Veteran's treatment records, neither opinion specifically acknowledged what medications the Veteran was taking to treat his hypertension, and neither provided a basis for concluding that he either was or was not continually taking the appropriate medication. Furthermore, Dr. J.K.R. relied on these inadequate opinions in rendering his own opinions dated in December 2007 and June 2009. Specifically, in December 2007, Dr. J.K.R. explained that "[a]lthough the [V]eteran had long standing hypertension and CAD[,] it is the hypercoagulable state that both Drs. R.M.V. and N.F. refer to as the proximate cause of the [V]eteran's infarction." Additionally, in June 2009, Dr. J.K.R. again referenced Drs. R.M.V. and N.F.'s findings that the Veteran was diagnosed with Myeloproliferative Disorder with thrombocytosis as the cause of his spinal cord infarct. In light of the Joint Motion, the Board finds that the Veteran should be provided with a medical examination that does not take into consideration medical opinions that have been found to be inadequate. 

Additionally, while Dr. J.K.R. did note Dr. K.S.G.'s opinion that "[aspirin] does decrease the propensity of the blood to clot; there have been no medical/scientific studies to confirm that aspirin, or any other medication, would prevent the development of the hypercoagulable state caused by the Myeloproliferative disorder" as was directed in the April 2009 Board remand, the Board finds that Dr. J.K.R. did not fully address Dr. K.S.G.'s assertion that "if aspirin was in fact supplied to [the Veteran] by [VA], and its refill was extended beyond 7 to 10 days, it is at least as likely as not that it was an exacerbating feature of the spinal cord infarct." Therefore, remand is warranted for the Board to comply with its previous remand order. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

Furthermore, in his opinions of December 2007 and December 2008, Dr. J.K.R. did not address the issues of whether a delay in the delivery of the Veteran's medications caused the spinal cord infarction that led to additional disabilities, or whether the delay in the delivery of his medications aggravated a pre-existing disability, including the Veteran's myeloproliferative disorder and/or hypertension, and led to the spinal cord infarction of other additional disability. Dr. J.K.R., in December 2007, also noted the medications the Veteran was taking prior to his stroke included Monopril, Norvasc, Allopurinol, and aspirin, and that he was taking all of these medications on a regular basis prior to December 1, 1996. However, Dr. J.K.R. did not specifically acknowledge which medication the Veteran was taking to treat his hypertension. The Court in November 2006 found that the opinions of Dr. R.M.V. and N.F. were inadequate for not specifically acknowledging what medications the Veteran was taking to treat his hypertension. Hence, on remand a VA examiner should specifically acknowledge which medication the Veteran was taking to treat his hypertension. 

Also, upon re-examination a VA examiner should consider whether the Veteran's failure to take any of his prescribed medications in December 1996 aggravated any of his current disorders, resulting in the stroke. The aggravation theory seems to have been raised by Dr. K.S.G.'s September 2007 statement in which he noted that aspiring was an "exacerbating feature of the spinal cord infarct." Such a theory was never specifically addressed by Dr. J.K.R. 

Finally, a review of the record shows that by rating decision dated in December 2010 the RO denied service connection for diabetes, cancer, blindness of the right eye, and glaucoma. The Veteran submitted a written notice of disagreement in January 2011. When a notice of disagreement is timely filed, the RO must reexamine the claim and determine if additional review or development is warranted. If no preliminary action is required, or when it is completed, the RO must prepare a statement of the case pursuant to 38 C.F.R. § 19.29, unless the matter is resolved by granting the benefits sought on appeal or the notice of disagreement is withdrawn by the appellant or his or her representative. 38 C.F.R. § 19.26.

As of this date, the Veteran has not been issued a statement of the case on these issues. Accordingly, the Board is required to remand these issues to the RO for the issuance of a statement of the case. See Manlincon v. West, 12 Vet. App. 238 (1999). 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. Schedule the Veteran for an appropriate VA examination by an appropriate specialist other than Dr. J.K.R. to determine the nature and etiology of the spinal cord infarction. The claims file should be made available to the examiner for review in conjunction with the examination. All indicated studies should be performed. 

Based on the examination and review of the record, the examiner should opine whether it is at least as likely as not (greater than 50/50 probability) that the Veteran's spinal cord infarct was due to negligent training, hospital care, medical, or surgical treatment or an examination furnished by VA.

The term "as likely as not" does not mean within the realm of medical possibility, but rather that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of that conclusion as it is to find against it.

The examiner should specifically note the following in making his/her opinion:

(i) Do not rely on the availability of any particular medication over the counter when rendering an opinion.

(ii) Specifically address all of the medical opinions obtained in this case (May 1997, March 1998, and December 1998 opinions from Dr. R.M.V.; September 1997 opinion from Dr. N.F.; September 2007 opinion from Dr. K.R.G.; and December 2007, March 2008, December 2008, and June 2009 opinions from Dr. J.K.R.). However, do not rely on any of the medical opinions previously obtained as the Court has determined that the previous opinions are inadequate. Specifically the examiner should address Dr. K.S.G.'s assertion that "if aspirin was in fact supplied to [the Veteran] by [VA], and its refill was extended beyond 7 to 10 days, it is at least as likely as not that it was an exacerbating feature of the spinal cord infarct." 

(iii) Address the issue of whether a delay in the delivery of the Veteran's medications caused the spinal cord infarction that led to additional disabilities, or whether the delay in the delivery of his medications aggravated a pre-existing disability, including the Veteran's myeloproliferative disorder and/or hypertension, and led to the spinal cord infarction of other additional disability. 

(iv) Specifically acknowledge which medications the Veteran was taking to treat his hypertension in December 1996/January 1997. 

(v) Consider whether the Veteran's failure to take any of his prescribed medications in December 1996 aggravated any of his current disorders, resulting in the stroke. Significantly, the aggravation theory seems to have been raised by Dr. K.S.G.'s September 2007 statement in which he noted that aspiring was an "exacerbating feature of the spinal cord infarct."

A complete rationale should be given for all opinions and conclusions expressed. If an opinion cannot be made without resort to speculation the examiner should so state and also explain why such an opinion cannot be made.

2. Issue a Statement of the Case (SOC) specifically regarding the issues of entitlement to service connection for diabetes, cancer, blindness of the right eye, and glaucoma. The RO should also advise the appellant of the need to timely file a substantive appeal if he desires appellate review of these issues.

3. After completion of the above, review the expanded record de novo, and determine if the claim can be granted. If the claim remains denied, issue a Supplemental Statement of the Case (SSOC) and afford the Veteran and his representative an opportunity to respond. Thereafter, the case should be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



_________________________________________________
H.N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).